Andrew S Hollins
ahollins@messner.com
MESSNER REEVES LLP
611 Anton Boulevard Suite 450
Costa Mesa, CA 92626
Telephone: (949) 612-9128
Facsimile: (949) 438-2304

Gregory P. Sitrick (admitted pro hac vice)
gsitrick@messner.com
Isaac S. Crum (admitted pro hac vice)
icrum@messner.com
Hettie Haines (admitted pro hac vice)
hhaines@messner.com
MESSNER REEVES LLP
7250 N. 16th Street, Suite 410
Phoenix, AZ 85020
Telephone: (602) 457-5059
Facsimile: (303) 623-0552

*Attorneys for Defendant Liberty Hill Foundation*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A TRADITION OF VIOLENCE, LLC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>GROUND GAME LA, et al.<br><br>Defendants. | Case No. 2:25-CV-3795-MRA-JDEx<br><br>**DEFENDANT LIBERTY HILL FOUNDATION'S NOTICE OF MOTION, MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Judge: Hon. Mónica Ramírez Almadani<br>Date: July 28, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B |

2:25-CV-3795-MRA-JDEx

**DEFENDANT LIBERTY HILL FOUNDATION'S MOTION TO DISMISS**

**TO COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 28, 2025 at 1:30 p.m., or as soon thereafter as this matter may be heard, in the Courtroom 9B of the United States District Court for the Central District of California, located at the Ronald Reagan Federal Building ad U.S. Courthouse, 411 W. Fourth St., Santa Ana, CA 92701, Defendant Liberty Hill Foundation will and hereby does move the Court for an Order dismissing the Complaint in its entirety as to Liberty Hill Foundation pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Motion is made on the grounds that the Complaint fails to state any claim for contributory copyright infringement liability against Liberty Hill Foundation upon which relief can be granted. As a grantmaking 501(c)(3) nonprofit private foundation, Liberty Hill Foundation did not itself publicize, copy, distribute, or profit from the works at issue, nor did it have the requisite knowledge of or control over the alleged infringing acts undertaken by independent grantees. Plaintiffs' conclusory allegations that Liberty Hill Foundation provided funding and promoted defendant Ground Game LA on social media are insufficient to establish contributory liability under established Ninth Circuit precedent. Plaintiffs have failed to offer any justification for their needless multiplication of their claim against Ground Game LA by unnecessarily including Liberty Hill Foundation in this lawsuit.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other evidence or argument as may be presented prior to or at the hearing.

**Compliance with Local Rule 7-3:**

This motion is made following a conference of the parties pursuant to L.R. 7-3 which took place by phone on June 6, 2025. The parties were unable to reach agreement regarding this Motion.

| | | |
|---|---|---|
| DATED: June 20, 2025 | | MESSNER REEVES LLP |

       */s/ Isaac S. Crum*
Isaac S. Crum (pro hac vice)
Attorney for Defendant Liberty Hill Foundation

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................iv

TABLE OF AUTHORITIES ..........................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES...............................................1

I.  Introduction ...........................................................................................................1

II. Factual Background ..............................................................................................2

    A.  Background Allegations...............................................................................2

    B.  Allegations Against Liberty Hill Foundation ..........................................4

III. Legal Standard .....................................................................................................5

    A.  Motion to Dismiss........................................................................................5

    B.  Contributory Infringement .........................................................................5

IV. Argument ...............................................................................................................6

    A.  Plaintiffs have failed to plausibly plead that Liberty Hill has the requisite knowledge of infringement. ..................................................................7

    B.  Plaintiffs have failed to plausibly plead that Liberty Hill "materially contributed" to the infringement. ...........................................................10

V. Public Policy Considerations..............................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ..................................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 5

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
    716 F. Supp. 3d 835 (C.D. Cal. 2024) ...................................................................... 6

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) ................................................................................................ 12

*Energy Intelligence Group, Inc. v. Jefferies, LLC*,
    101 F. Supp. 3d 332 (S.D.N.Y. 2015) ..................................................................... 11

*Faulkner v. Natl. Geographic Society*,
    211 F. Supp. 2d 450 (S.D.N.Y. 2002) ............................................................. 8, 9, 11

*Green v. U.S. Dept. of J.*,
    111 F.4th 81 (D.C. Cir. 2024) ................................................................................. 12

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................................... 5

*Intri–Plex Technologies, Inc. v. Crest Group, Inc.*,
    499 F.3d 1048 (9th Cir. 2007) ................................................................................... 2

*Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................................ 6, 10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ......................................................................... 5, 9, 12

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ......................................................................... 5, 6, 10

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ............................................................................. 6, 11

*Rearden LLC v. Crystal Dynamics, Inc.*,
   No. 17-CV-04187-JST, 2019 WL 8275254 (N.D. Cal. July 12, 2019) ...... 9, 10

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................ 6

*Riley v. Natl. Fedn. of the Blind of N. Carolina, Inc.*,
   487 U.S. 781 (1988) ...................................................................................... 12

*See Coto Settle. v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ........................................................................ 2

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ........................................................................................ 6

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) .......................................................................... 5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 5

**DEFENDANT LIBERTY HILL FOUNDATION'S MOTION TO DISMISS**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

This is a case that should never have been brough against Defendant Liberty Hill Foundation ("Liberty Hill" or "Defendant"). Indeed, Plaintiffs' entire theory of liability against Liberty Hill is completely unsupported by law and, if the law were expanded to include conduct as suggested by Plaintiffs, it would have an almost unimaginably chilling effect on philanthropy and non-profit grant-makers. It would also violently impact the First Amendment rights to freedom of speech and freedom of association especially in the political context and, if allowed to proceed, would raise a serious questions (and potentially an as-applied challenge) to the constitutionality of such expanded liability under the Copyright Act.

Imagine the ramifications if Plaintiffs' theories of liability are to be accepted. For example, during the 2024 presidential campaign it was well reported that one candidate's campaign was alleged to have engaged in copyright infringement by playing certain music at its political rallies.[1] Under Plaintiffs' theory of contributory infringement *anyone* who thereafter donated money to that campaign—activities that are clearly protected speech—would have been liable as contributory infringers under the Copyright Act. Indeed, here, Plaintiffs are attempting to hold Liberty Hill liable for its decision to exercise its own free speech rights and provide funding to Ground Game LA to support its political, reporting mission. Concepts that lie at the heart of First Amendment protections. Liability for such protected action simply is not, and cannot be, consistent with either accepted First Amendment or copyright jurisprudence.

Thankfully, however, the Ninth Circuit has been clear as to what does, and more importantly, what does *not* lead to liability for contributory copyright

---

[1] *See e.g.,* https://www.washingtonpost.com/style/2024/09/07/donald-trump-campaign-music-playlist-lawsuits/

infringement. Based on the Complaint, as pleaded, this case falls squarely in the latter category. Where an entity like Liberty Hill, a 501(c)(3) public charity that advances movements for social change, provides *generalized* funding—as opposed to particularized funding directly for infringement—to a third party, there simply is no liability for contributory copyright infringement. The Complaint fails to allege any particularized funding by Liberty Hill directed to the alleged infringement of any of the copyright registered works, and therefore should be dismissed for failure to state a claim.

## II. Factual Background

### A. Background Allegations

- In 2017, Defendant Ground Game LA ("Ground Game"), a grassroots Los Angeles-based 501(c)(4) nonprofit organization and political advocacy group, created Knock LA, a journalistic platform administered by Ground Game. *Compl.* ¶ 16.

- In November 2020, non-party Cerise Castle began "developing content for Knock LA as an independent freelance journalist." *Id.* ¶ 17.

- This led to the creation of 15 articles authored by Ms. Castle which were created and published in 2021.[2]

- April 2022, Mr. Camacho, began creating content for Knock LA as an independent freelance contributor, including twenty-three (23) articles and

---

[2] *See* e.g., "Working in the Gray Area" (incorrectly listed in the Complaint as "Work in the Gray Area"), created in 2021, published on March 24, 2021, and registered on September 25, 2024 as U.S. Copyright Registration No. TX0009434884, available at https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=TX0009434884&Search_Code=REGS. *Compl.*, ¶¶ 3, 17. The Copyright registration makes clear these articles were created in 2021 and published on or about March 24, 2021. On a motion to dismiss, the Court may consider materials incorporated into the complaint or matters of public record. *See Coto Settle. v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing *Intri–Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)).

- photographs. *Id.* ¶ 19.
- This led to the creation of 16 photographs identified in the Complaint which were created and published between 2022 and 2023.[3] *Id.*
- In 2024 Ms. Castle was serving as an "executive editor" of Knock LA. *Id.,* ¶ 21.
- In that role, on March 15, 2024 (years after the publication of Ms. Castle's works and just shy of a year after publication of Mr. Camacho's work), Ms. Castle submitted a "formal" request to GGLA that Knock LA "separate from Defendant GGLA." "The formal request was submitted by Ms. Castle, who was serving as an executive editor" "on the behalf of herself, Mr. Camacho, and other Knock LA contributors." *Id.*
- On April 10, 2024, GGLA terminated Ms. Castle and Mr. Camacho's access to all Knock LA accounts allegedly not allowing "for any transfers or removals of Ms. Castle's or Mr. Camacho's copyrighted content from Knock LA website or social media platforms." *Id.* ¶ 24.
- Copyright registrations were not filed covering either Ms. Castle's articles or Mr. Camacho's photographs until September/October 2024, over a year after the publication of Mr. Camacho's photographs and over three years after the publication of Ms. Castle's articles. *See* footnotes 2–3, *supra*.
- Allegedly, "[t]o date, much of the copyrighted material has not been removed from any Knock LA platforms, and Defendant GGLA have failed to return Ms. Castle's and Mr. Camacho's copyrighted work to the Plaintiffs." *Id.* ¶ 25.

---

[3] *See e.g.,* 'Sapd-2' created in 2023, published June 21, 2023, and registered on October 8, 2024 as U.S. Copyright Registration No. VA0002417628, available at https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=VA0002417628&Search_Code=REGS . Compl., ¶¶ 4, 19.

B.  Allegations Against Liberty Hill Foundation

- Liberty Hill Foundation, is alleged to have "actual knowledge" of the alleged infringement, *i.e.*, the continued hosting of the Castle articles and Camacho pictures on the Knock LA website after April 10, 2024. *Compl.*, ¶ 16.

- This actual notice is allegedly based on an email from Camacho to Liberty Hill on July 9, 2024. *Id.*

- Liberty Hill is alleged to have, two years before this alleged actual notice, to have provided a $50,000 grant to Defendant POWER in FY 2022. *Id.* This is before Mr. Camacho's photographs were even created. *See note 3, supra.*

- Liberty Hill is alleged to have included a representative (Meghan Choi) from GGLA on its podcast, "Conversations from the Frontlines" (Episode 4), on July 10, 2024, the day after Mr. Camacho's alleged notice letter. *Compl.*, ¶ 16.

- Liberty Hill is alleged to have promoted or featured content referencing GGLA on its social media feeds thus "publicizing" or "amplifying" GGLA. *Id.*

- Finally, Liberty Hill is alleged (without citation) to have mentioned GGLA "prominently in its 2024 Impact Report." *Id.*

- The above acts are characterized as "extensive promotion" according to Plaintiff which "demonstrates both actual knowledge of the infringing activity and material contribution to the infringement, as Defendant Liberty Hill was aware that GGLA was using Plaintiffs' works without authorization on their website, Patreon page (their primary fundraising platform) and in promotional materials such as their 'Most Read Articles of 2022' and year-end reports." *Id.* ¶¶ 16, 22, and 43.

- Plaintiffs also allege, without specificity that "Defendant Liberty Hill continues to provide substantial financial support and promotional platforms to Defendants GGLA and POWER while they exploit Plaintiffs' protected works without authorization." *Id.*

III. **Legal Standard**

A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

B. Contributory Infringement

Contributory copyright infringement is a "a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017) (hereafter "*Giganews*"). As the Ninth Circuit stated in another Perfect 10 case, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007), cited by Plaintiffs in their Complaint:

> In order for [plaintiff] to show it will likely succeed in its contributory liability claim against [defendant], it must establish that [defendant's] activities meet the definition of contributory liability recently enunciated in [*Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*,

545 U.S. 913, 929–30 (2005)]. Within the general rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," *Grokster,* 545 U.S. at 930, 125 S.Ct. 2764, the Court has defined two categories of contributory liability: "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* at 942, 125 S.Ct. 2764 (Ginsburg, J., concurring) (quoting *Sony [Corp. of Am. v. Universal City Studios, Inc.],* 464 U.S. [417] at 442, 104 S.Ct. 774 [(1984)]); *see also id.* at 936–37, 125 S.Ct. 2764.

*Id.* This Circuit has also articulated the test for contributory infringement as follows: "one contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Giganews,* 847 F.3d at 670 (quoting *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n,* 494 F.3d 788, 794–95 (9th Cir. 2007) (hereafter "*Visa*")). Even under the test espoused in *Giganews* (which appears to be broader than the Supreme Court's *Grokster* holding), a third party "can be liable for materially contributing to infringement only where its participation in the infringing conduct of the primary infringer is substantial." *BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 716 F. Supp. 3d 835, 843 (C.D. Cal. 2024); (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995)). Or put another way, "[A defendant] cannot be said to materially contribute to the infringement . . . [where] they have no direct connection to that infringement." *Visa*, 494 F.3d at 796.

### IV.   Argument

As explained above, in order to plausibly plead contributory infringement against Defendants Liberty Hill, Plaintiffs' must plausibly plead that Liberty Hill (1) had actual knowledge of the infringement, and (2) took specific steps to materially contribute to or induce that infringement. There are no allegations that Liberty Hill

induced the infringement. As explained below, neither of the other elements have been plausibly pleaded, and this case should be dismissed.

      A.    <u>Plaintiffs have failed to plausibly plead that Liberty Hill has the requisite knowledge of infringement.</u>

Given the intertwined relationship between Knock LA, Ground Game LA, Mr. Camacho and Ms. Castle, it is simply impossible for the "knowledge" requirement to have been pleaded in this case. As has been stated in other circuits, the "knowledge standard" for contributory infringement "is an objective one; contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (emphasis in original) (citation omitted).

Here, Plaintiffs' Complaint centers around online articles and photographs posted to the "Knock LA" website. Compl., ¶ 2. These articles were published in 2021 when Ms. Castle was affiliated with Knock LA and the photographs were published in 2023 when Mr. Camacho was affiliated with Knock LA. *Id.* ¶ 19 and footnotes 2–3, *supra*. Indeed, both Ms. Castle and Mr. Camacho were, as pleaded, "independent journalists" working with Knock LA at that time and at some points Ms. Castle was serving as executive editor of Knock LA. Compl. ¶ 21. These facts instantly raise a number of questions related to ownership of the underlying works. For example: If Ms. Castle was the executive editor of Knock LA, was she not an employee under California law? What about Mr. Camacho? Plaintiffs' 2024 demands of GGLA regarding "unpaid labor," "lack of support for Mr. Camacho in connection with lawsuits," and "administrative failures" all sound like complaints by employees. *Id.*, ¶ 21. If they are employees, or otherwise received compensation for their work by Knock LA, how are these not "works made for hire," in contradiction of the Complaint's conclusory assertion. *See id.,* ¶¶ 15, 20. Or alternatively, whether, given their roles at Knock LA, Ms. Castle or Mr. Camacho had fiduciary duties or other obligations to assign or grant (express or implied) licenses to their reporting to

Knock LA. Finally, what obligations, if any, did Knock LA have to remove the materials that were posted to the Knock LA website during Ms. Castile tenure as executive editor. The typical journalistic arrangement allows publishers to continue to publish works by departed journalists.

Given these questions, it is simply impossible for a third-party like Liberty Hill to "know" who owns copyrights in the materials posted to Knock LA website. Or "know" who is going to prevail in this litigation between Plaintiffs and Ground Game LA. And, while it is true that Plaintiffs sent Liberty Hill a cease-and-desist letter demanding Liberty Hill not promote a podcast featuring a Ground Game LA employee, that letter (and indeed the assertions in this case) are contrary to expected industry norms. Typically, when reporters leave a journalistic outlet—be it the New York Times, the LA Times, or the Orlando Sentinel—that reporter's stories and related photographs remain on the newspaper's platform. In keeping with this norm, after Plaintiffs left Knock LA, their journalism remained largely published on the Knock LA website. Compl., ¶ 25. Liberty Hill had (and continues to have) no independent way to verify who owns the copyrights to the material and/or whether the continued existence of the copyrighted material on the Knock LA website violates anyone's intellectual property rights.

This is similar to the case in *Faulkner v. Natl. Geographic Society* from the Southern District of New York. 211 F. Supp. 2d 450, 474 (S.D.N.Y. 2002), opinion modified on denial of reconsideration, 220 F. Supp. 2d 237 (S.D.N.Y. 2002), and *aff'd sub nom. Faulkner v. Natl. Geographic Enterprises Inc*., 409 F.3d 26 (2d Cir. 2005). In *Faulkner,* the Court, in dismissing any contributory liability by Kodak pointed to the fact that in that case, while Kodak *did* know that Faulkner alleged to be the owner of certain copyrights due to Kodak's knowledge of his lawsuits against National Geographic, it concluded that since "the work-for-hire issue requires resolution by a trier of fact, it is difficult to conclude that Kodak should have known simply from the fact of these lawsuits that plaintiffs owned the copyrights at issue." The same is true

here. Simply because Plaintiffs sent Liberty Hill a letter alleging ownership of the copyrights at issue in this case, the fact that they are litigating against Ground Game LA, makes clear that this is a disputed issue. Furthermore, it would be contrary to all established norms in the publishing industry if when a journalist left a publication the publication immediately ceased to have any rights to continue to host previously published articles. Like in *Faulkner*, and unlike cases like *Grokster* that involve counterfeit music or software, "plaintiffs' allegations of infringement are anything but readily verifiable, making [defendant's] lack of knowledge regarding true copyright ownership objectively reasonable." *Id.*

A similar conclusion was reached by the Norther District of California in *Rearden LLC v. Crystal Dynamics, Inc.*, No. 17-CV-04187-JST, 2019 WL 8275254, at *10 (N.D. Cal. July 12, 2019). In *Rearden,* the Court held that even though the defendant was aware of the dispute over ownership of copyrights, it agreed with the Court in *Faulkner* and explained why, for policy reasons, dismissal of contributory liability in such cases is the correct policy:

> The Court agrees with the *Faulkner* court that where "plaintiffs' allegations of infringement are anything but readily verifiable," a purported contributory infringer's "lack of knowledge regarding true copyright ownership [is] objectively reasonable." *Faulkner*, 211 F. Supp. 2d at 475 (stressing that "the question of infringement turns on complex analysis of contractual arrangements going back twenty years and more"). As [defendant] points out, to hold otherwise would require third parties to simply cease doing business with accused infringers until a potentially lengthy ownership dispute is resolved. Nor does the *Faulkner* court's approach leave copyright plaintiffs without a remedy. As this order makes clear, a third-party defendant may nevertheless be held liable for vicarious infringement. Moreover, a plaintiff may seek compensation from the direct infringer, and if the infringement claim is sufficiently strong, obtain a preliminary injunction to halt the infringing conduct at its source, as [plaintiff] did in this case. . . . The Court concludes that this adequately allocates risk in such scenarios. *See Amazon.com*, 508 F.3d at 1170 (explaining that courts "analyze contributory liability in light of 'rules of fault-based

liability derived from the common law' " (quoting *Grokster*, 545 U.S. at 934)).

*Id*. Here, like in *Reardon*, there is a dispute over rights to the copyrighted work and whether Knock LA and its owner Ground Game LA can continue to host articles and photographs that Plaintiffs themselves were involved in uploading to the Knock LA website when they were associated with that publication. It would be unjust to assess liability and hold that third parties have knowledge as to who is the true owner of the articles based on a cease-and-desist letter sent by one of the parties to the litigation. To do so would indeed "require third parties to simply cease doing business with accused infringers until a potentially lengthy ownership dispute is resolved," a public policy to be avoided. *Id*. Based on the facts pleaded in the Complaint, Liberty Hill respectfully requests that the Court dismiss the claim of contributory infringement against it because Plaintiffs have not (and cannot) plausibly plead that Liberty Hill had the requisite knowledge to be liable.

  B. <u>Plaintiffs have failed to plausibly plead that Liberty Hill "materially contributed" to the infringement.</u>

Plaintiffs' claims against Liberty Hill should also be dismissed because they have failed to plausibly plead the remaining elements of contributory infringement. As an initial matter, this is true if the Court embraces Justice Ginsburg's formulation of contributory infringement in *Grokster*[4] since there are no allegations Liberty Hill either induced infringement or distributed a product used to infringe. It is also true, however, if this Court applies the broader test for contributory infringement from *Giganews* finding liability only where a defendant "either (a) materially contributes to or (b) induces that infringement." *Giganews,* 847 F.3d at 670. While Plaintiffs aver

---

[4] "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Grokster,* 545 U.S. at 942 (Ginsburg, J., concurring).

that Liberty Hill "materially contributed" to the infringement, all the allegations reflect nothing more than mere contributions to defendant, Ground Game LA, and they are all unrelated to the infringement. Such unrelated contributions are insufficient as a matter of law. A defendant has only "'materially contributed' if she has encouraged or assisted another's infringement." *Energy Intelligence Group, Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 341 (S.D.N.Y. 2015); see also *Faulkner,* 211 F.Supp.2d 450, 473–74. "The . . . assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Id*.

The same is true in the Ninth Circuit. For example in *Visa*, the court was clear that in order to meet the "material contribution" threshold, there must be a direct connection to the infringement. *Visa*, 494 F.3d 796 ("The credit card companies cannot be said to materially contribute to the infringement in this case because they have no direct connection to that infringement.") Like in *Visa*, "the infringement rests on the reproduction, alteration, display and distribution of [Plaintiffs' articles and photographs] over the Internet. [Plaintiffs have] not alleged . . . that [Defendants'] systems are used to alter or display the infringing images." *Id.* Similarly, like in *Visa*, "[n]or are Defendants' systems used to locate the infringing images." *Id.* To the contrary, Liberty Hill is *only* alleged to have: (1) hosted Ground Game LA's former CEO on its podcast, (2) given grant money to Ground Game LA and $50,000 grant to Defendant POWER in FY 2022, and (3) promoted Ground Game LA and its journalism in its 2024 Impact Report and via social media channels. None of these activities are anything like the situations where third parties have been found to have materially contributed to the alleged infringement.

Again, like in *Visa*, while providing grant money to Ground Game LA could arguably make it easier for their website to continue to host the allegedly infringing material, "the issue here is reproduction, alteration, display and distribution, which can occur without payment. Even if infringing images were not paid for, there would

still be infringement." *Id.* at 797.  Even if Liberty Hill did not provide any grant money or promote Ground Game LA or its journalism, "there would still be [alleged] infringement."  As a result, there cannot be contributory liability in these circumstances.

In short, since the pleaded assistance from Liberty Hill to Ground Game LA does not "bear a direct relationship to the infringing acts" or show that "the [alleged] contributory infringer [Liberty Hill] . . . acted in concert with the direct infringer" Plaintiffs have failed to plead the requisite material contribution for contributory infringement liability to exist.

## V.    Public Policy Considerations

It has been clear for decades that "the solicitation of charitable contributions is protected speech.  *See e.g., Riley v. Natl. Fedn. of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 789 (1988).  This country's lengthy jurisprudence regarding the contours of the First Amendment are not frequently at odds with the Copyright Act.  Indeed, most intersections between Copyrights and the First Amendment are resolved by the fair use doctrine, which is one of two "traditional First Amendment safeguards" designed to strike a balance in copyright law. *Eldred v. Ashcroft*, 537 U.S. 186, 220 (2003). Copyright laws, however, "are not categorically invulnerable to First Amendment challenge." *Green v. U.S. Dept. of J.*, 111 F.4th 81, 88 (D.C. Cir. 2024).  Plaintiffs' Complaint asks this Court to endorse its theory that individuals and entities who contribute to non-profits can be held contributorily liable based on those donations (and speech promoting those donations) if the non-profits are alleged to have engaged in copyright infringement.  Plaintiffs ask this Court to endorse this theory even where the donor has no control over how the funds are being used or knowledge of the validity of the underlying infringement claims.  Not only that, Platinffs argue that this is indeed already the law "[u]nder established law, including *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)."  Compl., ¶ 47.  That assertion is

**DEFENDANT LIBERTY HILL FOUNDATION'S MOTION TO DISMISS**

simply not true. To the contrary, potential liability in this case is an unconscionable distortion of the Ninth Circuit's *Perfect 10* line of cases. Plaintiffs know this, or should know this, and the only conceivable basis for suing non-profit grant organizations as co-defendants in this copyright dispute is an impermissible multiplication of this proceeding to needlessly harass non-profits who have nothing to do with the underlying copyright infringement dispute.

Liberty Hill respectfully asks the Court dismiss the claim brought against it.

DATED: June 20, 2025                     MESSNER REEVES LLP

                                                     */s/ Isaac S. Crum*
                                       Gregory P. Sitrick (admitted pro hac vice)
                                       gsitrick@messner.com
                                       Isaac S. Crum (admitted pro hac vice)
                                       icrum@messner.com
                                       Hettie Haines (admitted pro hac vice)
                                       hhaines@messner.com
                                       MESSNER REEVES LLP
                                       7250 N. 16th Street, Suite 410
                                       Phoenix, AZ 85020
                                       Telephone: (602) 457-5059
                                       Facsimile: (303) 623-0552

                                       Andrew S Hollins
                                       ahollins@messner.com
                                       MESSNER REEVES LLP
                                       611 Anton Boulevard Suite 450
                                       Costa Mesa, CA 92626
                                       Telephone: (949) 612-9128
                                       Facsimile: (949) 438-2304

**Local Rule 11-6.2 Certification**

"The undersigned, counsel of record for Liberty Hill, certifies that this brief contains 3,959 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 20, 2025

                                                  /s/ *Isaac S. Crum*
                                                  Isaac S. Crum