**ARS COUNSEL, P.C.**
Almuhtada Smith (Cal. Bar No. 263762)
asmith@arscounsel.com
515 S. Flower St., 18th Floor
Los Angeles, CA 90071
Telephone: (213) 293-3565
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A TRADITION OF VIOLENCE, LLC, a California limited liability company; and BEN CAMACHO ENTERPRISES LLC, a California limited liability company; and Cerise Castle, an individual<br><br>                    Plaintiffs,<br><br>v.<br><br>GROUND GAME LA, a California nonprofit corporation; PEOPLE ORGANIZED FOR WESTSIDE RENEWAL, a California nonprofit corporation; and THE CALIFORNIA ENDOWMENT, a California nonprofit corporation<br><br>                    Defendants. | Case No.:  2:25-cv-3795-MRA-JDEx<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**<br>2. **CONTRIBUTORY INFRINGEMENT**<br>3. **APPROPRIATION OF NAME AND LIKENESS**<br>4. **RESTITUTION FROM TRANSFEREE BASED ON UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Cerise Castle, A Tradition of Violence, LLC and Ben Camacho Enterprises LLC (collectively, "Plaintiffs), complain and allege against Defendants Ground Game LA, People Organized for Westside Renewal, and The California Endowment (collectively, "Defendants") as follows:

## <u>INTRODUCTION</u>

1.    This action is brought by the rightful and exclusive copyright owners of numerous award-winning articles, photographs, and other highly valuable intellectual property created by internationally acclaimed journalists, Cerise Castle and Ben Camacho, which have been willfully misappropriated by Defendants. Ms. Castle is a recipient of the prestigious 2023 American Mosaic Journalism Prize for her reporting related to deputy gangs, multiple California Journalism Awards, and the 2022 International Women's Media Foundation Courage Award. Mr. Camacho is a distinguished Society of Professional Journalists LA honoree and recipient of the Charles Rappleye Investigative Journalism Award. Their invaluable work, which has been recognized by leading institutions including Yale Law School, as well as their images, names, and likenesses, are now being misappropriated by Knock LA through its parent organizations, sister organizations Ground Game LA and People Organized for Westside Renewal. Plaintiffs seek relief for Defendants' egregious copyright infringement and appropriation of their names, images, and likenesses, which have caused devastating and irreparable harm to Plaintiffs' professional reputation, economic interests, and future business opportunities.

2.    Defendants continue to willfully, maliciously, and systematically exploit Plaintiffs' copyrighted content and names, images, and likenesses across multiple platforms, including but not limited to the Knock LA website, social media channels, newsletters, and fundraising materials, deliberately ignoring multiple formal takedown notices and cease-and-desist demands. Defendants Ground Game and POWER have gone as far as using Plaintiffs' copyrighted work, names, image, and likenesses to solicit funding for their organizations. These activities have caused severe and ongoing irreparable harm to Plaintiffs' professional reputations, market value, and business interests. This brazen disregard for Plaintiffs' intellectual property and privacy rights demands immediate injunctive relief and substantial monetary damages.

## THE PARTIES

3.      Plaintiff A Tradition of Violence, LLC ("Plaintiff Castle") is, and at all times mentioned herein, a California limited liability company that owns the copyrights to fifteen (15) registered copyrights created by Cerise Castle, a multi-award winning journalist and at all times mentioned herein was, an adult and resident of Los Angeles County, California. The fifteen (15) copyrights include the following titles and registration numbers:  "Working in the Gray Area", TX 9-434-884; "What We Don't Know", TX 9-434-343; "What Happens When No One is Looking", TX 9-434-353; "The Pink Hand, Big Listo, and Crook", TX 9-434-346; "The Perfect Breeding Ground", TX 9-434-354; "The Miracle Trial", TX 9-434-886; "The Compton Executioners", TX 9-434-344; "The Carnage", TX 9-434-345; "Regulators: Mount Up", TX 9-434-883; "Lynwood's Worst Nightmare", TX 9-434-887; "The Protected Class", TX 9-434-890; "Los Banditos", TX 9-434-348; "Hunting for Humans", TX 9-434-888; "How to Get Paid for Being Fired", TX 9-434-352; "Friends of the DA", TX 9-434-351.

4.      Plaintiff Ben Camacho Enterprises LLC ("Plaintiff Camacho") is, and in all times mentioned herein, a California limited liability company that owns the copyrights to twenty-three (23) registered copyrights created by Ben Camacho, an investigative journalist and documentary photographer focused on state-sponsored violence and impacted communities, and at all times mentioned herein was, an adult and resident of Los Angeles County, California. The twenty-three (23) registered copyrights include the following sixteen (16) titles and registration numbers for photographs: "sapd-2" VA 2-417-628; "AHF-1" VA 2-417-611; "LAPPL-1" VA 2-417-619; "instituto-1" VA 2-417-625; "240307_INSIDESAFE_CAMACHO-1" VA 2-417-627; "Kilpatrick-1" VA 2-417-622; "AGLAGO" VA 2-417-634; "Kilpatrick-2" VA 2-417-623; "amezcua-1" VA 2-417-630; "SAPD-1" VA 2-417-662; "street&samo-6" VA 2-417-664; "AHF-2" VA 2-417-633; "WOC_SAG" VA 2-417-632; "MsItaly-8" VA 2-417-618; "MsItaly-3" VA 2-417-612; "MsItaly-1" VA 2-417-615.

5.      Defendant Ground Game LA ("Defendant GGLA") is, and at all times mentioned herein was, a California non-profit corporation with its principal headquarters located in Los Angeles County, California.

6. Defendant People Organized for Westside Renewal ("POWER") is and, at all times mentioned herein was, a California non-profit corporation with its principal headquarters located in Los Angeles County, California.

7. Defendant The California Endowment ("Defendant The California Endowment" or "California Endowment") is, and at all times mentioned herein was, a California non-profit corporation with its principal headquarters located in Los Angeles County, California.

8. On information and belief, Plaintiffs allege that at all times mentioned herein, in performing the acts hereinafter alleged, Defendants were acting within the course and scope of said capacity, identity, agency, representation, and/or employment and were acting within the scope of their authority, whether actual or apparent.

Plaintiffs are informed and believe and, on that basis, allege that at all times mentioned herein, each Defendant was responsible in some manner or capacity for the occurrences alleged herein and that Plaintiffs' damages, as alleged herein, were proximately caused by all said Defendants.

12. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, Defendants and each of them were the agents, representatives, and/or employees of each other and every other Defendant. In doing the things hereinafter alleged, Defendants and each of them were acting within the course and scope of said alternative personality, capacity, identity, agency, representation, and/or employment and were within the scope of their authority, whether actual or apparent.

13. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, Defendants and each of them were the trustees, partners, servants, joint venturers, shareholders, contractors, and/or employees of each and every other Defendant, and the acts and omissions herein alleged were done by them, acting individually, through such capacity and within the scope of their authority, and with the permission and consent of each and every other Defendant and that said conduct was thereafter ratified by each and every other Defendant and that each of them is jointly and severally liable to Plaintiffs.

FIRST AMENDED COMPLAINT
2:25-cv-3795-MRA-JDEx

### JURISDICTION AND VENUE

14.     This is an action for damages and injunctive relief against Defendants for, inter alia, willful, direct, and contributory copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501(a) and 17 U.S.C. § 512(c)(3). This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 17 U.S.C. § 501(a), and 28 U.S.C. § 1338(a) and (b).

15.     This Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a) in that the claim arises in this judicial district, and, on information and belief, the Defendant and its agents reside and may be found in this judicial district, and the injury suffered by Plaintiff took place in this judicial district. Defendants are subject to the general and specific personal jurisdiction of this Court because of their contacts with the State of California, and their places of incorporation and principal places of business lie within the State of California. Specifically, Plaintiffs' key agents, Cerise Castle and Ben Camacho, reside in Los Angeles, California. Moreover, Defendants' nonprofit corporations are directed to and utilized by Los Angeles residents. Each Defendant has a significant presence throughout Los Angeles.

### STATEMENT OF FACTS

17.     In 2017, Defendant GGLA, a grassroots Los Angeles-based 501(c)(4) nonprofit organization and political advocacy group, created Knock LA, which operates as a distinct and independent journalistic platform administered by GGLA, serving as a key vehicle for public communications and advocacy efforts dedicated to uplifting marginalized communities throughout Greater Los Angeles (See Exhibit 1, Figs. 1-4).

14.     Knock LA's website (the "Website") includes a static footer across all pages, within which a hyperlink labeled 'Pitch Stories to Knock LA' directs users to a page where users are invited to "write for [them]", outlining what Knock LA seeks in its articles, how to direct the pitches to Knock LA.

15.     On this page, Defendants represented that they would pay for articles on a sliding scale basis, with payments ranging from $200.00 to $500.00.

16.     Cerise Castle ("Ms. Castle") is a journalist specializing in arts, culture, civil rights, criminal justice, and human-interest stories. Her world-renowned reporting has earned her numerous prestigious accolades, including the 2023 American Mosaic Journalism Prize, four California Journalism Awards in 2024 (including first place awards in In-Depth Reporting and Coverage of Youth and Education), the 2022 International Women's Media Foundation Courage Award, the American Journalism Online Award for Best Use of Public Records, and multiple Los Angeles Press Club Awards. She has been named a 2024 Poynter Fellow at Yale University and has received grants from USC's Center For Health Journalism and the International Women's Media Foundation. Her reporting and commentary have been featured in major media outlets including ABC, The Los Angeles Times, Los Angeles Magazine, MTV, NPR, Salon, and Vanity Fair.

17.     A Tradition of Violence, LLC ("Plaintiff Castle") is and was at all relevant times the sole author and exclusive copyright owner of the works created by Ms. Castle at issue. As the individual who originated and masterminded the expression of the works, Plaintiff Castle exercised complete creative control over their development, directing and determining the final form and content of each work. Plaintiff Castle conceived the structure, sequence, and substance of the works, and brought them into being through her own intellectual conception. Plaintiff Castle has acquired all rights, title, and interest in such works.

18.     Based on verifiable Google Analytics metrics, Plaintiff Castle's "Tradition of Violence" article series has generated over three (3) million views, making it demonstrably the most viewed and profitable content ever published by Defendants, thereby establishing its substantial commercial value and the extent of Defendants' unjust enrichment (See Exhibit 2, Figs. 5-8).

19.     In November 2020, Ms. Castle began developing content for Knock LA as an independent freelance journalist, including fifteen (15) copyrightable works. The fifteen (15) copyrights include the following titles and registration numbers: "Working in the Gray Area", TX 9-434-884; "What We Don't Know", TX 9-434-343; "What Happens When No One is Looking", TX 9-434-353; "The Pink Hand,

Big Listo, and Crook", TX 9-434-346; "The Perfect Breeding Ground", TX 9-434-354; "The Miracle Trial", TX 9-434-886; "The Compton Executioners", TX 9-434-344; "The Carnage", TX 9-434-345; "Regulators: Mount Up", TX 9-434-883; "Lynwood's Worst Nightmare", TX 9-434-887; "The Protected Class", TX 9-434-890; "Los Banditos", TX 9-434-348; "Hunting for Humans", TX 9-434-888; "How to Get Paid for Being Fired", TX 9-434-352; "Friends of the DA", TX 9-434-351.

20.    Most notably, Ms. Castle created, produced, and hosted "A Tradition of Violence," 15-part written series detailing the history and criminal activity of deputy gangs, which is one of the most popular works featured on Defendant's GGLA website and the Website, and has been cited in official Los Angeles County Civil Grand Jury reports. Defendants willfully and knowingly continue to use this work without authorization in their fundraising efforts, along with Plaintiff Castle's name, image, and likeness, directly profiting from the unauthorized exploitation, including using them to solicit funding and ongoing fundraising campaigns on their website (See Exhibit 4, Figs. 10-16).

21.    On information and belief, the A "Tradition of Violence" series drove, and continues to drive, a substantial majority of web traffic to the Knock LA site—an inference supported by public reception, media coverage, and Knock LA's own repeated promotion of the series (See Exhibit 2, Figs. 5-8).

22.    Given Ms. Castle's status as an independent contractor, Ms. Castle's relationship to Defendants was not one of employer-employee. No work-for-hire agreement or intellectual property rights assignment or transfer agreement was ever executed between Ms. Castle and Defendants, and Ms. Castle is the sole author of the fifteen copyrights registered to Plaintiff Castle.

23.    In April 2022, Ben Camacho ("Mr. Camacho"), a multi-award winning investigative journalist honored by the Society of Professional Journalists Los Angeles, recipient of the prestigious Charles Rappleye Investigative Journalism Award, and featured speaker at Yale Law School's Access and Accountability Conference, who is also a distinguished documentary photographer and union member and labor organizer with the IWW Freelance Journalists Union, began creating content for Knock LA as an independent freelance contributor, including twenty-three (23) articles and photographs for which Plaintiff Camacho holds the copyrights. Defendants have removed seven of the registered

copyrights from public view; however, Plaintiff Camacho can still view them on Defendants' website due to retained journalist view privileges. The twenty-three (23) registered copyrights include the following sixteen (16) titles and registration numbers for photographs: "sapd-2" VA 2-417-628; "AHF-1" VA 2-417-611; "LAPPL-1" VA 2-417-619; "instituto-1" VA 2-417-625; "240307_INSIDESAFE_CAMACHO-1" VA 2-417-627; "Kilpatrick-1" VA 2-417-622; "AGLAGO" VA 2-417-634; "Kilpatrick-2" VA 2-417-623; "amezcua-1" VA 2-417-630; "SAPD-1" VA 2-417-662; "street&samo-6" VA 2-417-664; "AHF-2" VA 2-417-633; "WOC_SAG" VA 2-417-632; "MsItaly-8" VA 2-417-618; "MsItaly-3" VA 2-417-612; "MsItaly-1" VA 2-417-615.

24.    Given Mr. Camacho's status as an independent contractor, his relationship to Defendants was not one of employer-employee. At no point did Mr. Camacho enter into any written work-for-hire agreement or execute any written instrument assigning or transferring his intellectual property rights to Defendants, as required under 17 U.S.C. § 204(a) for any valid transfer of copyright ownership. Despite this, Defendants continue to prominently feature Mr. Camacho's award ceremony video (taken by Ms. Castle) on their Patreon fundraising page, which they actively promote through their January 2025 newsletter and other channels to solicit donations. Mr. Camacho has been subjected to two lawsuits from the City of Los Angeles without any support from Defendant GGLA for his work.

25.    Plaintiff Ben Camacho Enterprises LLC ("Plaintiff Camacho") is and was at all relevant times the sole author and exclusive copyright owner of the works created by Mr. Camacho at issue. As the individual who originated and masterminded the expression of the works, Plaintiff Camacho exercised complete creative control over their development, directing and determining the final form and content of each. Plaintiff Camacho conceived the structure, sequence, and substance of the works, and brought them into being through his own intellectual conception. Plaintiff Camacho has acquired all rights, title, and interest in such works.

26.    Defendant The California Endowment materially contributed to the infringement of Plaintiffs' works by continuing to fund and promote Defendants Ground Game LA and POWER despite actual knowledge obtained through required grant reporting, expenditure monitoring, and direct written notice from Plaintiffs. Defendant The California Endowment provided multiple invitation-only grants

totaling $150,000 to Defendants in fiscal year 2023, including a $50,000 grant to expand Knock LA's coverage on racial equity, one of the main focuses of "A Tradition of Violence," as evidenced by their 990 tax forms (See Exhibit 5, Fig. 17). Defendant The California Endowment continues to fund POWER as confirmed in POWER's fiscal year 2024 budget. Defendant The California Endowment maintains strict oversight through mandatory reporting requirements and disclosure obligations on funded content, as demonstrated by notices on Knock LA articles. Despite receiving direct notice of the infringing activities in early 2024 and confirmation that a California Endowment employee was informed of concerns regarding unauthorized use of Plaintiffs' works, Defendant The California Endowment has continued to provide financial support that enables and facilitates the ongoing copyright infringement. On March 27, 2025, Defendant The California Endowment denied direct involvement in response to Plaintiffs' demand letter, but evidence demonstrates their actual knowledge and continued material contribution to the infringement through critical funding that sustains Defendants' operations and platforms.

17.    After concerns were raised about Knock LA's editorial independence in 2021, Defendant GGLA began conversations with Knock LA staff and freelancers regarding separating Knock LA from Ground Game LA to preserve the integrity and independence of the journalism.

18.    In April 2022, Mr. Camacho began creating content for Knock LA as an independent freelance contributor. Mr. Camacho is a multi-award winning investigative journalist honored by the Society of Professional Journalists Los Angeles, recipient of the prestigious Charles Rappleye Investigative Journalism Award, and featured speaker at Yale Law School's Access and Accountability Conference. He is also a distinguished documentary photographer and union member and labor organizer with the IWW Freelance Journalists Union., including twenty-three (23) articles and photographs for which Plaintiff Camacho holds the copyrights. Defendants have removed seven of the registered copyrights from public view; however, Mr. Camacho can still view them on Defendants website as he retains his journalist view privileges. The twenty-three (23) registered copyrights include the following sixteen (16) titles and registration numbers for photographs: "sapd-2" VA 2-417-628; "AHF-1" VA 2-417-611;    "LAPPL-1"    VA    2-417-619;    "instituto-1"    VA    2-417-625;

"240307_INSIDESAFE_CAMACHO-1" VA 2-417-627; "Kilpatrick-1" VA 2-417-622; "AGLAGO" VA 2-417-634; "Kilpatrick-2" VA 2-417-623; "amezcua-1" VA 2-417-630; "SAPD-1" VA 2-417-662; "street&samo-6" VA 2-417-664; "AHF-2" VA 2-417-633; "WOC_SAG" VA 2-417-632; "MsItaly-8" VA 2-417-618; "MsItaly-3" VA 2-417-612; "MsItaly-1" VA 2-417-615.

20.     Given Mr. Camacho's status as an independent contractor, his relationship to Defendants was not one of employer-employee. At no point did Mr. Camacho enter into any work-for-hire agreement or sign any contract transferring his intellectual property rights to Defendants. Despite this, Defendants continue to prominently feature Mr. Camacho's award ceremony video (taken by Ms. Castle) on their Patreon fundraising page, which they actively promote through their January 2025 newsletter and other channels to solicit donations. Mr. Camacho has been subjected to two lawsuits from the City of Los Angeles without any support from Defendant GGLA for his work.

21.     Prior to early 2024, while operating under Defendant The California Endowment's stringent grant oversight process, Defendants consistently used Plaintiffs' copyrighted works to raise funds and promote their organizations (See Exhibit 4, Figs. 10-16 [Knock LA's donation and Patreon page screenshots]).  Separately, Defendant The California Endowment provided two substantial grants to Knock LA in FY 2023 totaling $125,000 ($50,000 and $75,000 respectively), with strict reporting obligations including interim narrative reports, final reports, and financial documentation of all grant-funded activities. Specifically, Defendants prominently featured Mr. Camacho's image and work on their Patreon page (their primary fundraising platform), included both Plaintiffs' work in their "Most Read Articles of 2022" promotional materials, and used Ms. Castle's "A Tradition of Violence" series in multiple fundraising campaigns. These unauthorized uses continued even after the Knock LA team, including collaborators and freelance journalists, formally requested to separate from Defendant GGLA on March 15, 2024. The formal request was submitted by Ms. Castle, who was serving as an executive editor, at the request of Defendant GGLA employee Alexandra Malek. Ms. Castle submitted the request to Defendant GGLA employee Alexandra Malek ("Ms. Malek") on the behalf of herself, Mr. Camacho, and other Knock LA contributors. The formal request included an Asset Transfer Agreement and a list of reasons for the separation, which included: 1) editorial overreach; 2) demands for unpaid labor; 3)

factual errors in reporting; 4) lack of support for Mr. Camacho in connection with the lawsuits filed by the City of Los Angeles; 5) administrative failures; 6) racial discrimination; and 7) inability to obtain funding.  On March 26, 2024, Ms. Malek stated via email to Ms. Castle and Mr. Camacho that "both boards have the proposal. No action has been taken yet." Ms. Malek was referring to the board of Defendants GGLA and POWER board as evidenced by the subsequent April 2, 2024, email. The boards of Defendants GGLA and POWER were scheduled to meet on Sunday, April 7, 2024. Ms. Castle and Mr. Camacho never received any substantive response regarding the proposal from Defendant GGLA.

22.    On April 10, 2024, at 8:30 PM, in a deliberately hostile and retaliatory action, Defendant GGLA abruptly terminated Ms. Castle and Mr. Camacho's access to all Knock LA accounts, including email accounts, effectively holding their copyrighted works hostage while continuing to profit from their unauthorized use, causing ongoing and irreparable harm to Plaintiffs' exclusive rights and market value. This abrupt removal did not allow for any transfers or removals of Ms. Castle's or Mr. Camacho's copyrighted content from Knock LA's website or social media platforms. Plaintiffs, through Mill Law Center, requested Defendant GGLA to "transfer ownership of content within the WordPress site that was written by Knock LA's team and freelancer," which included Ms. Castle and Mr. Camacho. This request was sent on April 16, 2024. On May 29, 2024, Mill Law Center sent a follow-up request to Defendant GGLA's attorney with a formal Notice and Demand for Takedown of Copyrighted Content. The notice included hyperlinks to seventy-three (73) items controlled by Defendant GGLA but belonging to Ms. Castle. The notice included eight (8) items, which belong to Mr. Camacho.

25.    To date, much of the copyrighted material has not been removed from any Knock LA platforms, and Defendant GGLA have failed to return Ms. Castle's and Mr. Camacho's copyrighted work to the Plaintiffs.

## **FIRST CLAIM FOR RELIEF**

**(Copyright Infringement 17 U.S.C. 501 *et seq.*)**

**(By Plaintiffs Against Defendants GGLA and POWER)**

26.    Plaintiffs repeat and reallege each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

28. Plaintiffs are the sole and exclusive owners of all rights, title, and interest in the copyrighted work at issue in this dispute, detailed in Paragraphs 22 and 25 (the "Works"), including the exclusive rights under 17 U.S.C. § 106 to reproduce, publicly display, and distribute the Works (See Exhibit 7).

29. The Works are wholly original creative expressions fixed in tangible media of expression and are indisputably protected under the Copyright Act. The Works are registered with the U.S. Copyright Office under registration numbers detailed in Paragraphs 22 and 25 and remain within its statutory term of protection.

30. The Works represent groundbreaking investigative journalism that has garnered national recognition and numerous prestigious awards (See Exhibit 2, Figs. 5-8). Neither Plaintiff Castle, Plaintiff Camacho, Ms. Castle, nor Mr. Camacho ever executed any work-for-hire agreements, copyright assignments, or any other contracts that would license or transfer their intellectual property rights to Defendants GGLA and POWER. Their work, of which they were the sole authors, was created and delivered as independent contractors with Plaintiffs maintaining full ownership of their intellectual property rights.

31. Plaintiffs initially granted Defendants GGLA and POWER limited permission to publicly display and distribute the Works. This permission was nonexclusive and revocable, and did not assign or transfer ownership or any exclusive rights under the Copyright Act.

32. Plaintiffs subsequently explicitly revoked this permission on April 10, 2024, and expressly notified Defendants GGLA and POWER in writing that they no longer had authorization to use, display, or distribute the Works on May 29, 2024 through formal takedown demands. Plaintiffs demanded that Defendants GGLA and POWER immediately remove the Works from their website, located at www.*knock-la.com*.

33. Despite receiving this notice, Defendants GGLA and POWER knowingly and willfully refused to remove the Works and have continued to publicly display and/or distribute them without Plaintiffs' authorization. Defendants GGLA and POWER deliberately and systematically promoted

and featured infringing activities through multiple high-visibility media channels, including their Instagram and Twitter posts (July 2024).

34.   Defendants GGLA and POWER's continued use of the Works after the revocation of permission constitutes a violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106, and therefore constitutes copyright infringement under 17 U.S.C. § 501(a).

35.   Defendants GGLA and POWER acted with knowledge of Plaintiffs' rights and in reckless disregard of those rights. Defendants GGLA and POWER's continued monetization and exploitation of these works through advertising revenue, donations, and grants constitutes knowing and willful infringement for commercial gain. As such, Defendants GGLA and POWER's continued unauthorized use of these materials, despite formal demands for their removal, constitutes willful infringement under 17 U.S.C. § 504(c)(2).

36.   Plaintiffs have satisfied the elements required to establish copyright infringement: (1) Plaintiffs own a valid copyright in the Works; and (2) Defendants GGLA and POWER copied and continued to publicly display original expression from the Works after Plaintiffs withdrew permission.

37.   As a direct and proximate result of Defendants GGLA and POWER's willful, knowing, and malicious infringement of Plaintiffs' rights, Plaintiffs have suffered and continue to suffer catastrophic economic and non-economic losses, including: substantial lost revenue from licensing and syndication opportunities, severe damage to their professional reputations, irreparable harm to their media relationships, and impairment of future business prospects, all in an amount to be proven at trial but believed to exceed $5 million.

38.   As a proximate result of the wrongful acts of Defendants GGLA and POWER, Plaintiffs have suffered and continue to suffer anxiety, worry, embarrassment, humiliation, mental anguish, emotional distress, pain and suffering, and have incurred medical and therapy expenses as a result. Plaintiffs are informed and believe and thereon allege that they will continue to experience said pain and mental and emotional suffering for a period in the future they cannot presently ascertain, all in an amount subject to proof at the time of trial.

39.    Plaintiffs have incurred and continue to incur legal expenses and attorneys' fees. Pursuant to California Government Code § 12965(b), Plaintiffs are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof at the time of trial.

40.    As a result of Defendants GGLA and POWER's unlawful acts, Plaintiffs are entitled to compensatory damages, equitable relief, attorneys' fees, costs, interest, and other forms of relief as provided by law.

41.    Defendants  GGLA and POWER committed, carried out, and/or ratified the acts herein alleged deliberately, maliciously, and oppressively with full knowledge of Plaintiffs' ownership rights, demonstrating a calculated pattern of bad faith conduct and willful disregard for federal copyright law and Plaintiffs' intellectual property rights, and Plaintiffs are entitled to recover punitive damages from Defendants GGLA and POWER in an amount according to proof. The unlawful conduct alleged above was engaged in and/or ratified by the officers, supervisors, and/or managing agents of Defendants GGLA and POWER, and each of them, who were acting at all times relevant to this Complaint within the scope and course of their employment. Pursuant to California Civil Code § 3294, Defendants GGLA and POWER are liable for punitive damages.

42.    The above-documented willful and malicious infringements entitle Plaintiffs to statutory damages of up to $150,000 per work under 17 U.S.C. § 504(c)(2), amounting to at least $4,650,000 for the thirty-one (31) separately registered and infringed articles and photographs. Given the Defendants GGLA and POWER's knowing and intentional conduct, their continued defiance of multiple formal takedown notices, their ongoing commercial exploitation through fundraising campaigns, and the prestigious, award-winning nature of the works, Plaintiffs are entitled to maximum statutory damages, plus attorney fees, costs, and preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502, and full costs pursuant to 17 U.S.C. § 505, and any further relief the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (Contributory Copyright Infringement, 17 U.S.C. 501 et seq.)

### (By Plaintiffs Against Defendant The California Endowment)

43.    Plaintiffs repeat and reallege each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

44.    Ms. Castle created, produced, and hosted "A Tradition of Violence," an investigative series aforementioned.

45.    On March 22, 2021, Defendants GGLA and POWER published the first "A Tradition of Violence" article on the Website.

46.    Plaintiffs, based on information and belief, this specific series drove sustained viewership that far outpaced any other content on the site. On information and belief, it was the primary driver of traffic for the publication and thereby central to its fundability and visibility.

47.    Plaintiff Castle asserts the series is one of the most widely distributed and commercially exploited works featured on Defendant GGLA's website, generating fundraising revenue and over three (3) million views to Knock LA's website, as verified by analytics Plaintiffs viewed before being locked out in 2024. The "A Tradition of Violence" series generated more traffic than any other content on Knock LA's website.

48.    Ms. Castle's reporting has garnered extensive national and international recognition, including the prestigious 2023 American Mosaic Journalism Prize, the 2022 International Women's Media Foundation Courage Award, and New York University's American Journalism Online Award for Best Use of Public Records.

49.    Defendant The California Endowment, through its website, states that funding opportunities are available by invitation only.

50.    Defendant The California Endowment made its first grant to Defendant POWER, for which the purpose of the grant reads "Knock LA – Supporting Coverage of Health and Racial Equality: to support expansion of the reporting on social justice, health and racial equity issues, as well as having

story translations in Spanish to increase reach to more diverse audiences in Los Angeles." its Form 990 for FY 2022 (See Exhibit 5, Fig. 17).

51.    Although some articles on the Website are available in Spanish, "A Tradition of Violence" is the only collection of work on the Website where all the included works are translated into Spanish.

52.    Defendant The California Endowments' financial year runs from April 1 to March 31. Therefore, the financial year within which this first grant was made from April 1, 2022, to March 31, 2023, as reflected on its Form 990 for FY 2022.

53.    In April 2022, Mr. Camacho, who was already a multi-award-winning investigative journalist honored by the Society of Professional Journalists, Los Angeles, and a highly demanded international photographer, began creating content for Knock LA as an independent freelance contributor.

54.    From May 2023 to March 2024, Mr. Camacho took photos and wrote articles that were published on the Website and received high acclaim.

55.    Defendant The California Endowment made its second grant to Defendant POWER, for which the purpose of the grant again reads "Knock LA – Supporting Coverage of Health and Racial Equality: to support expansion of the reporting on social justice, health and racial equity issues, as well as having story translations in Spanish to increase reach to more diverse audiences in Los Angeles." its Form 990 for FY 2023.

56.    Defendant The California Endowments' financial year runs from April 1 to March 31. Therefore, the financial year within which this grant was made was from April 1, 2023, to March 31, 2024, as reflected on its Form 990 for FY 2023.

57.    On April 23, 2024, Defendant The California Endowment received direct notice of the infringement from Plaintiff Castle during a Zoom meeting, followed by written communications reiterating the intellectual property concerns.

58.    As established, Defendant The California Endowments' financial year runs from April 1 to March 31. Therefore, the financial year of 2024 would run from April 1, 2024, to March 31, 2025.

59.     If a grant was made for FY 2024, the financial year within which this grant was made was from April 1, 2024, to March 31, 2025, as patterned on the Forms 990 from FYs 2022 and 2023.

60.     Defendant The California Endowment's financial year of 2024 encompasses all but nine days of the infringement period.

61.     Although Defendant The California Endowment's 2024 financial year has concluded, Defendant The California Endowment can file the Form 990 for FY 2024 as late as February 15, 2026, per California tax regulations.

62.     On April 23, 2024, twenty-two days after the start of their 2024 financial year, and thirteen days into the infringement period, Defendant The California Endowment received direct notice of the infringement from Plaintiff Castle during a Zoom meeting, which included executive-level employees, followed by written communications reiterating the intellectual property concerns.

63.     Despite this direct notice, and notwithstanding Defendant The California Endowment's March 27, 2025, letter denying involvement (See Exhibit 7, Figs. 24-26), Defendant The California Endowment continued to provide financial support that enabled Defendants Ground Game LA and People Organized for Westside Renewal to sustain and amplify the unauthorized publication and fundraising activities built upon Plaintiffs' protected works. Defendant The California Endowment's continued support after acquiring knowledge of the infringing conduct and recklessly disregarding Plaintiff's copyright rights constitutes material contribution to the infringement under established Ninth Circuit law.

64.     As aforementioned, by issuing a grant to Defendants GGLA and POWER, Defendant The California Endowment provides substantial and ongoing funding with comprehensive oversight requirements through mandatory quarterly narrative and financial reporting requirements, requiring disclosure notices on all funded works, which would include those at issue.

65.     Plaintiffs, on information and belief, contend that in 2024, it cost $38,490.20 to operate Knock LA and the Website, and, so far, in 2025, it has cost $10,090 to operate Knock LA and the Website.

66.     Plaintiffs, on information and belief, contend, based on consecutive grant history and the fact that Defendant The California Endowment provides funding opportunities by invitation only, if Defendant The California Endowment issued a grant to Knock LA in 2024 and 2025, assumedly of $50,000 each based on consecutive grant history, Defendants GGLA and POWER would be able to use the entirety the grant to operate Knock LA exclusively.

67.     Plaintiffs, on information and belief, contend that Defendants GGLA and POWER could not operate Knock LA, the Website, and its related activities without Defendant The California Endowment's grants, further evidenced by its operating costs aforementioned, thereby infringing on Plaintiffs' exclusive rights of copyright.

68.     Defendant The California Endowment knew or had reason to know of Defendants GGLA and POWER's ongoing infringing activity, which they actively used for fundraising and self-promotion. By providing funding that supports Defendants GGLA and POWER's infringement of Plaintiffs' protected works, Defendant The California Endowment willfully materially contributed to the infringement through its continued financial support throughout fiscal year 2024 and failure to exercise its oversight authority, despite receiving direct notice of the infringing activities in early 2024.

69.     Plaintiffs are informed and believe Defendant The California Endowment materially contributed to and is liable for contributory copyright infringement through continuing to fund and support the unauthorized reproduction, display, distribution, and commercial exploitation of Plaintiffs' copyrighted materials despite knowledge of infringement despite Plaintiffs' explicit revocation of any license or permission and formal takedown demands. Defendant The California Endowment's continued exploitation of these works through ongoing monetization by the direct infringers, which Defendant The California Endowment enabled and facilitated through its continued financial support and promotion of these activities, despite knowledge and reckless disregard of the infringement, constitutes knowing and willful contributory infringement. This represents a narrow application of contributory copyright based on direct knowledge and continued financial support of infringing activities, and does not threaten broader nonprofit speech or legitimate grantmaking activities. Under

*Eldred v. Ashcroft*, 537 U.S. 186 (2003), copyright law has built-in First Amendment protections, and First Amendment scrutiny is unnecessary.

70. Plaintiffs are informed and believe, and based thereon allege, that Defendant The California Endowment engaged in knowing and wilful contributory infringement, the full extent of which is known only to Defendants and will be revealed through discovery.

71. As a result of the foregoing, Plaintiffs suffered both special and general damages in an amount to be established at trial.

### THIRD CLAIM FOR RELIEF

**(Common Law Appropriation of Name and Likeness Under California State Law)**

**(By Plaintiff Cerise Castle Against Defendants GGLA and POWER)**

46. Plaintiffs repeat and reallege each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein, including, without limitation, the allegations set forth in the first claim for relief for copyright infringement.

46. Plaintiff Cerise Castle, as aforementioned, is an award-winning journalist and recipient of prestigious honors in the journalism field. Moreover, Plaintiff Cerise Castle has amassed 32,000 Instagram followers and 32,000 X (formerly known as Twitter) followers. On the other hand, Defendants GGLA and POWER have only 13,600 Instagram followers and 19,100 X followers combined. Thus, Plaintiff Castle has more social media reach and online presence than Defendants GGLA and POWER.

47. Plaintiff Cerise Castle is the sole author and owner of the copyrighted works at issue in this case (the "Articles"), which include reports and investigations addressing matters relevant to the Los Angeles community and broader public interest (See Exhibit 2, Figs. 5-8). The Articles are protected by United States copyright law, as demonstrated in Paragraph 22, and Plaintiff Castle has not explicitly nor implicitly granted a license or authorization for its reproduction or public distribution by Defendants GGLA and POWER after April 10, 2024.

48. Defendants GGLA and POWER have engaged in a pattern of conduct, whereby they use Plaintiff Cerise Castle's name and likeness on the Website's landing page, all of the Articles, a

page dedicated to the "Tradition of Violence" series, which includes her name in large, centralized font, and an author's page detailing her image, and her biography and accomplishments (See Exhibit 1, Figs. 1-4). The aforementioned page is hyperlinked on each Article.

49. Defendants GGLA and POWER used Plaintiff Cerise Castle's name and likeness after she explicitly revoked consent twice: first on April 10, 2024, when she was locked out of Knock LA's administrative software, and second on May 29, 2024, when she issued a takedown notice for her articles and associated materials.

50. Defendants GGLA and POWER used the Plaintiff Cerise Castle's name or likeness for their advantage, whether commercial or otherwise (See Exhibit 3, Fig. 9). Defendants GGLA and POWER solicited funding from donors using the Articles outside of the Website. On the Website, each page containing the Article has a floating "support" button that leads to a Patreon page to solicit donations for exclusive content. Moreover, the Website has fixed "Support" buttons at the top and bottom of each webpage to solicit donations for Defendants GGLA and POWER.

51. Plaintiff Cerise Castle contends that, based on Google Analytics metrics, the "Tradition of Violence" article series constitutes the most highly viewed and most profitable content published on the Website.

52. Defendants GGLA and POWER's use of Plaintiff Cerise Castle's identity is not incidental or referential. Rather, Defendants GGLA and POWER are intentionally leveraging Plaintiff Cerise Castle's name, image, and reputation as the author of the Articles to lend credibility to the infringing materials, attract attention to the website and platform, and commercially benefit by driving traffic, building audience engagement, and generating funding and donations.

53. Unlike the work of Mr. Camacho, which was substantially removed from the Website around the time of filing the initial Complaint, Ms. Castle's work, name, image, and likeness have remained prominently displayed and featured on the Website. The continued, front-and-center presence of Plaintiff Cerise Castle's work, name, image, and likeness on the Website underscores their intrinsic value and enduring significance. This differential treatment further demonstrates that Plaintiff's work,

name, image, and likeness are not merely incidental, but central to Defendant GGLA and POWER's offerings and public image

54.     Defendants GGLA and POWER's conduct constitutes an unlawful misappropriation of Plaintiff Cerise Castle's identity for Defendants GGLA and POWER's own advantage, in violation of the common law right of publicity.

55.     While Defendants GGLA and POWER may attempt to invoke the defense of newsworthiness or public interest, this defense fails because their use of Plaintiff Castle's identity goes far beyond legitimate news reporting and constitutes commercial exploitation. Their prominent display of her name, image, and biographical information alongside donation solicitations demonstrates a clear intent to capitalize on her reputation for financial gain. Instead, Defendants GGLA and POWER are using Plaintiff Cerise Castle's identity and copyrighted authorship to promote infringing commercial use of her work, falsely implying endorsement or affiliation by Plaintiff Cerise Castle. The First Amendment does not shield such unauthorized commercial exploitations.

56.     Defendants GGLA and POWER's use of the Plaintiff Cerise Castle's name and likeness caused injury to Plaintiff Castle (See Exhibit 7, Figs. 24-26).

57.     As a direct and proximate result of Defendants GGLA and POWER's actions, Plaintiff Cerise Castle has suffered and continues to suffer catastrophic economic and non-economic losses, including but not limited to: substantial lost revenue from licensing and syndication opportunities, severe damage to their professional reputations in the journalism industry, irreparable harm to their relationships with major media outlets, and devastating impairment of future business prospects and career opportunities, all in an amount to be proven at trial but believed to exceed $5 million.

58.     Defendants GGLA and POWER acted wilfully, knowingly, and with reckless disregard of Plaintiff's rights, thereby justifying an award of punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Restitution from Transferee Based on Unjust Enrichment)

### (By Plaintiffs Against Defendants GGLA and POWER)

59.     Plaintiffs repeat and reallege each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

60.     From 2020 to April 10, 2024, and from 2022 to April 10, 2024, Plaintiffs Castle and Camacho, respectively, created and submitted original written works to Defendants GGLA and POWER, which Defendants GGLA and POWER published on the Website (See Exhibit 1, Figs. 1-4). At all times, this arrangement was understood by the parties as an exchange of mutual benefit: Plaintiffs would contribute high-quality content to help bring awareness to Defendants GGLA and POWER's causes and missions, and in return, Defendants GGLA and POWER would provide Plaintiff with ongoing publication access, exposure, and association with the Website's growing community. Plaintiffs provided these contributions in reliance on this implicit arrangement.

61.     Defendants GGLA and POWER received a benefit, as the Website displays Plaintiffs' copyrighted work alongside multiple prompts to donate and support Knock LA on each web page. This work came about from the services rendered by Plaintiffs.

62.     Defendants GGLA and POWER used Plaintiffs' unpaid contributions to build credibility, drive engagement, and attract public participation in a monetized submission model without Plaintiffs' knowledge (See Exhibit 4, Figs. 10-16). Under this model, the Website's "Pitch Stories to Knock LA" invites new contributors to submit articles, and is now offering a payment "on a sliding scale ranging from $200.00 to $500.00 per article depending on factors such as article length, research effort, costs involved, and need" (See Exhibit 3, Fig. 9). Defendants GGLA and POWER continue to retain and publicly display Plaintiff's past works to promote the Website, despite Plaintiffs' repeated revocation of consent and requests for removal.

63.     Given Plaintiffs' status as award-winning journalists and recipients of prestigious honors in the field, they reasonably expected Defendants GGLA and POWER to pay at least $500.00 per contribution.

64.     As a result, Defendants GGLA and POWER have been unjustly enriched through the retention and public use of Plaintiffs' unpaid labor, reputation, and original contributions, which they used to confer value and legitimacy upon their current monetized business model. Defendants GGLA

and POWER's enrichment came at the direct expense of Plaintiffs, who received no compensation and no longer receive the platform access that once formed the basis of the parties' informal arrangement.

65.    After April 10, 2024, Defendants GGLA and POWER used Plaintiffs' work and materials to solicit funding and donations through multiple prompts to donate and support Knock LA on each page containing Plaintiffs' content (See Exhibit 4, Figs. 10-16).

66.    Plaintiffs are entitled to restitution in the form of disgorgement of profits wrongfully retained, or in the alternative, the reasonable value of the benefit conferred upon Defendants GGLA and POWER. It would be unjust for Defendants GGLA and POWER to retain the benefit, i.e., the donations and any other monetary support, without compensating Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1.    For an Order enjoining Defendants from infringing on Plaintiffs' copyrighted work, temporarily while this action is pending, and thereafter permanently;

2.    An order enjoining Defendants GGLA and POWER from using Plaintiff Castle's name, image, likeness, or biographical information in any commercial or promotional context.

3.    Disgorgement of any profits obtained from the unauthorized use of Plaintiff Castle's identity.

4.    An award of maximum statutory damages under the Copyright Act attributable to Defendants' willful and knowing infringement of at least thirty-one (31) separately registered copyrighted works, with damages totaling no less than $4,650,000 (calculated at $150,000 per work for willful infringement of thirty-one separately registered works), such willfulness demonstrated by Defendants' continued use of the infringing works for fundraising purposes on their Patreon platform, newsletters, and annual reports even after notice of infringement, and by Defendant The California Endowment's continued financial support of the infringing activities

after receiving direct notice in early 2024, that this Court deems proper and just
under the Act in accordance with 17 U.S.C. § 504(a)(2) & (c);

3.      For an award of the costs of suit;

4.      For an award of reasonable attorneys' fees under the Copyright Act, 17 U.S.C. §
505; For an award of pre-judgment interest and post-judgment interest to the
maximum extent allowed by law;

5.      For an award of declaratory and injunctive relief, requiring Defendant The
California Endowment to provide a comprehensive accounting of all revenue,
donations, grants, and other financial benefits received, distributed, or facilitated in
connection with the infringing works from January 1, 2024, to the present. This
includes all grants to Defendants POWER and Ground Game LA. Plaintiffs have
suffered special and general damages, including lost licensing revenue, diminished
market value, reputational harm, and lost syndication opportunities, all to be
established at trial;

6.      For an order requiring Defendants to provide a full accounting of all revenues and
profits  derived from their unauthorized use of Plaintiffs' copyrighted works;

7.      For such other relief at law or in equity to which the Plaintiff may show it is entitled
or as the Court deems just and proper.

## **DISCOVERY NEEDS**

Plaintiffs intend to obtain internal communications and public website analytics from Knock LA
and its funders through discovery. These records are necessary to determine the impact of Plaintiffs'
work on Knock LA's reach and whether continued funding was tied to traffic derived from Plaintiffs'
copyrighted materials.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: June 25, 2025            Respectfully submitted,

*Almuhtada Smith*

**ARS COUNSEL, P.C.**
Almuhtada Smith (Cal. Bar No. 263762)
asmith@arscounsel.com
515 S. Flower St. 18th Floor
Los Angeles, CA 90071
Telephone: (213) 293-3565
Attorney for Plaintiffs

FIRST AMENDED COMPLAINT
2:25-cv-3795-MRA-JDEx